IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL R. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-cv-844-SRW |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**[1]

Plaintiff Michael R. Thompson commenced this action on December 14, 2017, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner denying his application for a period of supplemental security income ("SSI"). *See* Doc. 1; Doc. 13 at 1. In his application, he alleges disability as of November 15, 2012,[2] due to "colon polyps," "ankles pain," "high blood pressure," and "bleeding ulcer." *See* R. 64, 226. On February 28, 2017, Administrative Law Judge Renita Barnett-Jefferson ("the ALJ") issued an adverse decision after holding a hearing on the

---

[1] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim for benefits was filed. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

[2] The relevant period for plaintiff's SSI application is the month in which he filed the application (May 2014) through the date of the ALJ's decision (February 28, 2017). *See* 20 C.F.R. §§ 416.330, 416.335; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (explaining that SSI appeal "require[d] a showing of disability between [claimant's SSI application date] and the date of the ALJ's decision").

plaintiff's application.³ *See* R. 15–32. On November 9, 2017, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. *See* R. 1–5.

In the instant appeal, the plaintiff asks the court to reverse the Commissioner's adverse decision and award benefits or, in the alternative, remand this cause to the Commissioner for further proceedings. *See* Doc. 13 at 7. This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. *See* 28 U.S.C. § 636(c). *See* Doc. 7; Doc. 8. For the reasons stated herein, and based upon its review of the record, the court finds that the Commissioner's decision is due to be affirmed.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A reviewing court "may not

---

³ Attorney James Bowles appeared with the plaintiff at the hearing held October 12, 2016 before the ALJ, and he is plaintiff's counsel of record before this court. *See* R.37; Doc. 1.

decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In other words, this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for SSI and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ'S DECISION

At step one of the five-step sequential evaluation process, the ALJ found that although plaintiff worked and had earnings in 2014, he was not engaged in substantial

4

gainful activity since his onset date of November 15, 2012. *See* R. 17. Next, the ALJ found that the plaintiff suffers from the severe impairments of history of left ankle fracture, gastritis, and hypertension. *Id*. The ALJ concluded that the plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. *See* R. 19–20. As she must, the ALJ considered all of the plaintiff's impairments individually and collectively in determining the plaintiff's residual functional capacity ("RFC"). *See* R. 20–30.

> The ALJ made the following RFC determination:
>
> [T]he claimant has the [RFC] to perform light work[4] as defined in 20 CFR [§] 416.967(b) except the claimant can occasionally use his left leg for pushing/pulling foot controls. He can never climb ladders and scaffolds. He can be occasionally exposed to humidity and wetness, uneven terrain, and extreme cold. He can never work in environments of unprotected heights.

R. 20. At steps four and five, the ALJ found that while plaintiff is unable to perform any past relevant work, there are jobs that exist in significant numbers in the national economy that he can perform. *See* R. 30–31. With the assistance of the testimony of a vocational expert ("VE"), the ALJ identified representative occupations such as bakery worker, machine tender, and small parts assembler that could be performed by an individual of the plaintiff's same age, education, work experience, and RFC. *See* R. 31–32. The ALJ's

---

[4] Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

5

findings resulted in a determination that the plaintiff "has not been under a disability … since May 14, 2014, the date the application was filed." R. at 32.

## ADMINISTRATIVE HEARING

At the hearing before the ALJ, plaintiff was 53 years old. R. 40. He claimed disability as of November 15, 2012. *Id.* He lives with his wife, who is 68 years old and is on disability due to bad knees. R. 41. Plaintiff attended special education classes in high school, but never finished or obtained a degree. R. 42–43. His past work was primarily as an auto mechanic and press operator. R. 43. His mechanic duties included changing oil, changing tires, and fixing and rotating tires. R. 44. In 2011, he was self-employed in changing tires and detailing vehicles. R. 45. In 2012 he was self-employed in pushing bales of cotton on a dolly and loading it onto an 18-wheeler truck. R. 45–46. In 2014, he worked for Columbus Taxi Service maintaining and servicing their vehicles. R. 46–47. He worked at that job less than six months and stopped working because his "leg got bad." R. 48. The ALJ noted that this employment was an unsuccessful work attempt. *Id.*

In response to questioning from his counsel, plaintiff testified that he is unable to read a newspaper or write a letter. R. 49–50. He had to quit work because he was unable to stand on his feet due to falling in a hole and crushing his left ankle.[5] R. 50. He underwent surgery, and hardware was placed inside his ankle. *Id.* Following the surgery, he had problems standing because the hardware would break through. R. 50–51. The hardware was later removed. R. 50. He currently has problems of swelling, pain, and throbbing all

---

[5] Plaintiff testified that he thought his injury occurred in the year 2000, *see* T. 50, but in his brief he states the incident and injury occurred in 2001. *See* Doc. 13 at 6.

the time. R. 51. Walking causes his ankle to swell. *Id.* He has stiffness in his ankle daily. *Id.* Cold weather makes his ankle worse. *Id.* He has arthritis in his left ankle. R. 52–53. He loses his balance because of his bad ankle and falls. R. 51. When asked if that was the main problem he cannot work, he responded "no." *Id.*

Plaintiff complains that he suffers from migraine headaches due to a metal plate placed in his head several years back when he was hit with a Coca-Cola bottle. R. 52. He gets headaches daily and treats them with over-the-counter pain medication. *Id.* Plaintiff suffers from high blood pressure and heart problems, and has gone into cardiac arrest twice, most recently in 2013. R. 53. He does not take medication for his heart or blood pressure because he cannot afford it. R. 53. He had a flare-up of a bleeding ulcer one month prior that required hospitalization. R. 53–54. He has chest pains regularly and has to take naps daily. R. 54. On an average day, he sits around the house and watches television or sits on the porch. R. 54. He has memory problems. R. 55. Given his medical problems, particularly his left ankle, plaintiff testified that he could not be on his feet six hours in an eight-hour day. *Id.* The ALJ asked plaintiff about his alcohol use given his history of abuse. R. 55–56. He testified that he drinks vodka with his neighbor once or twice per week. R. 56.

The VE testified that plaintiff's past relevant work would be considered heavy and medium exertional work, which she concluded plaintiff would be unable to perform given his limitations. R. 57–59. The VE testified, however, that there are other jobs available in the national economy that an individual of plaintiff's age, education, and work experience could perform at the light exertional level with the added limitations of occasional pulling and pushing of foot controls with the left lower extremity; no climbing of ladders,

7

scaffolds, or working in environments of unprotected heights; and limited occasional exposure to humidity, wetness, extreme cold, and uneven terrain. R. 58, 60. Specifically, the VE identified representative occupations such as bakery worker, machine tender, and small parts assembler. R. 60. With the added limitation of no more than three to five-step tasks, the representative jobs would still be available. *Id.* The VE testified that her testimony was consistent with the Dictionary of Occupational Titles (DOT). *Id.*

## ISSUE ON APPEAL

The plaintiff raises a single argument on appeal. Plaintiff contends that the ALJ's finding that he has the RFC to perform light work with certain limitations is not supported by substantial evidence. *See* Doc. 13 at 5. The Commissioner maintains that the ALJ applied proper legal principles and her decision is based on substantial evidence. The court agrees with the Commissioner.

## DISCUSSION

Plaintiff contends that the ALJ erred in concluding that he was capable of engaging in light exertional work given his left ankle fracture. Plaintiff argues that because of the arthritis in his left ankle, he is unable to stand or walk for six hours. He testified that his ankle is swollen, painful and stiff, and he loses his balance and falls. He points to the physical examination of Steve Odeh, M.D., who noted that plaintiff was likely to have difficulty with work activities that required prolonged standing and walking, as supportive of his claim that he cannot perform light exertional work. While he has the ability to walk and stand for short periods of time, plaintiff submits that the ALJ failed to evaluate properly his ability to work on a continuing and sustained basis – *i.e.,* for eight hours a day for five

8

days per week, or an equivalent work schedule as required by Social Security Ruling ("SSR") 96-9p.[6]

The ALJ's RFC found that plaintiff had the ability to perform light exertional work with some limitations. "The [RFC] is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 416.945(a) (a person's RFC "is the most you can still do despite your limitations"). The RFC assessment must be based on all of the relevant evidence in the case record, including the plaintiff's medical history; laboratory findings; the frequency, duration and side effects of treatment; plaintiff's daily activities; recorded observations; medical source statements; effects of symptoms, including pain; and work attempts or evaluations. *See* SSR 96-8P, 1996 WL 374184 at *5 (July 2, 1996). The RFC assessment must include a discussion in which the ALJ "explain[s] how any material inconsistencies or ambiguities in the evidence of the case record were considered and resolved." *Id.* at *7.

Here, the ALJ considered all of the evidence and found that plaintiff retained the ability to perform a range of light work, with only occasional use of his left leg for pushing/pulling foot controls and some postural and environmental limitations. R. 20. In reviewing the medical evidence, the ALJ noted that the ankle injury occurred several years

---

[6] In the Eleventh Circuit, Social Security Rulings are not binding on this court, but the rulings are entitled to deference. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994) ("[T]he the Secretary's interpretation is entitled to deference …. [if the] interpretation is a reasonable and permissible interpretation of the provisions of the Social Security Act."). Although they lack the force of regulation, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *see, e.g.*, *McCloud v. Barnhart*, 166 F. App'x 410, 419 (11th Cir. 2006) (citing SSR 96-6p as authoritative).

prior to the alleged onset date. R. 21. The medical records reflect that x-rays taken of the left ankle on June 29, 2001, revealed comminuted malleolar fractures with displacement of fragments and partial subluxation of the talus relative to the tibia. R. 21–22, 308. X-rays taken on March 26, 2002, showed internal fixation of a bi-malleolar fracture that had healed. R. 22, 307. There was mild tissue swelling, but no acute bone abnormalities. R. 22, 307. There was some loosening about the screw. R. 22, 307. The x-rays of the left foot were normal. R. 22, 307. Regarding future treatment for the left ankle injury, the ALJ observed:

> Since 2002, claimant's left ankle has not been followed by a specialist, such as an orthopedist. The subsequent medical is virtually absent any complaints of left ankle pain even though claimant has made emergency room visits for other complaints. There is no evidence of surgery, physical therapy, injections or regularly prescribed pain medications used to treat musculoskeletal pain.

R. 22. Plaintiff was seen in the emergency room on March 25, 2006, for complaints of pain in his left knee due to hitting it. R. 22, 334. X-rays taken on that date showed no bone or soft tissue abnormalities. R. 22, 312. Of significance, there is no mention in the records of problems or complaints regarding the left ankle. R. 22, 334. In an October 3, 2005 visit to the ER, plaintiff's extremities were non-tender, within normal range of motion and without calf tenderness or foot swelling. R. 22–23, 296.

Since his alleged onset date, plaintiff has had numerous visits to the emergency room and hospital with no complaints or remarkable clinical findings regarding his left ankle. *See, e.g.,* R. 22–23, 25–27, 378–79, 391–92, 402, 430–31, 444, 459, 472 (generally displayed no edema, cyanosis, clubbing, or sensory or motor deficits); R. 365, 377–79,

381–84, 386–89, 391–92, 433 (displayed normal gait without an assistive device, a full range of motion in virtually all extremities, and full muscle strength). In her decision, the ALJ reviewed in detail the medical opinions and evidence from the plaintiff's alleged onset date and in the medical record as a whole, *see* R. 21–28, and to the extent warranted, accounted for plaintiff's left ankle limitations in the RFC. The ALJ's findings are supported by substantial evidence.

Plaintiff suggests that the ALJ should have attributed greater weight to the opinion of Dr. Odeh, who stated that plaintiff would have difficulty doing work that involved prolonged periods of standing or walking. *See* Doc. 13 at 6. Upon referral by the Alabama Disability Determination Service, the plaintiff underwent a physical examination by Dr. Odeh on March 13, 2015. R. 385–93. The ALJ considered the records and opinions of the consultative examiner and gave Dr. Odeh's statement less weight, explaining as follows:

> The undersigned [ALJ] gives less weight [to] the opinion of Steve Odeh, M.D., regarding claimant's physical functional abilities (Exhibit B8F). Dr. Odeh states that claimant is likely to have difficulties with work duties that require prolonged standing and walking but that clinical findings did not indicate exclusion of such activities. It seems the doctor based his opinion more upon claimant's subjective reports of ankle pain than to his own clinical findings. The doctor observed the claimant to have a non-antalgic gait, normal (5/5) motor strength in all extremities, and full range of motion of his left ankle. There was no indication of swelling. This would suggest that he has the ability to stand and/or walk for at least six hours during an 8-hour workday. The lack of regular treatment for claimant's ankle pain would indicate that his pain is not disabling. Even though the claimant has made multiple emergency room visits during the adjudicative period for various complaints, he has rarely complained of ankle pain to the ER staffs. Furthermore, Dr. Odeh's statement is too vague to be of probative value here. The undersigned has considered claimant's ankle pain in the [RFC] by reducing the weight to be lifted and/or carried to the light exertional level and limited the pushing and pulling of the left lower extremity to occasional.

11

R. 30.

Case law in this circuit requires an ALJ to "state with particularity the weight [she] gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The ALJ did so here, explaining that she gave less weight to Dr. Odeh's opinion because his clinical findings on examination were inconsistent with the plaintiff's subjective complaints, the lack of medical treatment for the left ankle, and the record as a whole. Thus, she applied the correct legal principles to her assessment of Dr. Odeh's opinion. Moreover, the ALJ is the one responsible for assessing a plaintiff's RFC. *See* 20 C.F.R. §§ 416.927(d)(2), 416.946(c). "[T]he task of determining a [plaintiff's RFC] and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

The ALJ's detailed RFC findings are based on substantial evidence, which is cited and discussed in the ALJ's written decision. While the plaintiff disagrees with the ALJ's factual findings, this court cannot reweigh the evidence and is limited to determining whether there is substantial evidence to support the Commissioner's decision. *See Dyer*, 395 F.3d at 1210. Based on the court's careful scrutiny of the record, it concludes that the ALJ's decision with regard to the RFC is based on substantial evidence and the Commissioner's decision is due to be affirmed.

## CONCLUSION AND ORDER

Upon consideration of the parties' briefs and the record, the Commissioner's decision is based on substantial evidence and is in accordance with controlling law. The Commissioner's decision will be AFFIRMED by a separate judgment.

Done, on this the 5th day of March, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge